IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CAROL BORNE<br><br>**Plaintiff,**<br><br>v.<br><br>**ALEJANDRO MAYORK, SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY**<br><br>**Defendant.** | CIVIL NO. 2:21-CV-240 |

## COMPLAINT

Plaintiff Carol Borne asserts her causes of action against defendant Alejandro Mayorkas, solely in his official capacity as Secretary of the United States Department of Homeland Security, regarding the unlawful employment actions of its agency, the United States Customs and Border Protection, and its office, the United States Border Patrol, as follows:

### THE PARTIES

1. Plaintiff is Carol Borne, a person of majority, currently domiciled in Louisiana.

2. Defendant is Alejandro Mayorkas, solely in his official capacity, the Secretary of the Department of Homeland Security (DHS), including its agency, United States Customs and Border Protection (CBP) (*see* 6 U.S.C. § 112(a) establishing the Secretary of DHS as the head of the department *and also* 6 U.S.C. § 211(e) establishing U.S. CBP).

### JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 42 U.S.C. § 2000e-2 *et seq*. (Title VII disparate treatment/impact); 42 U.S.C. § 2000e-3 *et seq*. (Title VII retaliation); and 42 U.S.C. § 2000e-16 (applicability of Title VII to federal employment) as more particularly set-out herein.

1

4. The Court has personal jurisdiction over Mr. Mayorkas, in his official capacity and as the proper defendant representing the United States Department of Homeland Security (and its agency, U.S. Customs and Border Protection), because all of the unlawful employment practices alleged herein occurred in the state of Louisiana (or were directed towards an employee working in Louisiana) and give rise to the specific Title VII causes of action in this case, and thus Mr. Mayorkas, in his official capacity and as the proper defendant for DHS and CBP, has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

5. Venue for Ms. Borne's Title VII claim is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because the alleged discriminatory employment practices occurred within this forum (specifically New Orleans), or were directed against Ms. Borne who was working in this forum (specifically New Orleans).

## PROCEDURAL AND STATUTORY ALLEGATIONS

6. At all relevant times, CBP employed more than 500 employees.

7. In June 2003, CBP hired Ms. Borne (woman) as a part-time clerk.

8. Ms. Borne was continuously employed by CBP as a civilian employee assigned to the Office of the United States Border Patrol ("USBP") from her hire date through her resignation in August 2020.

9. On or about December 3, 2018, Ms. Borne timely applied for the position of Supervisory Mission Support Specialist ("SMSS"), GS-0301-14, in New Orleans Sector, via USAJobs.gov posting USBP-IMP-10361517-CJH. The position advertised in this positing is customarily known within USBP as the Director of Mission Readiness Operations Division ("Director of MROD"),

despite the terminology in the USAJobs.gov posting.

10. Ms. Borne first learned she was not selected for the position on May 6, 2019.

11. Ms. Borne timely initiated EEO contact on or about May 14, 2019, alleging sex disparate treatment discrimination.

12. Ms. Borne attempted to mediate her dispute with USBP, but mediation was not successful, and Ms. Borne received her Notice of Right to File a charge of discrimination in this matter on or about July 30, 2019.

13. Ms. Borne timely filed her initial Individual Complaint of Employment Discrimination in this matter on or about August 13, 2019 (Agency No. HS-CBP-01474-2019), alleging disparate treatment based on her sex (female).

14. Thereafter, Ms. Borne timely added the following like or related claim to her initial complaint as follows:

    a. On November 14, 2019, Ms. Borne learned she was not selected for the permanent position of Supervisory Mission Support Specialist, GS-0301-14, in New Orleans, Louisiana, advertised under Job Opportunity Announcement: USBP-SMP-10610632-CS. As did the job announcement mentioned above, this job announcement advertised the Director of MROD position. Ms. Borne timely filed an amendment to her initial complaint on or about December 29, 2019, alleging both sex-based discrimination and retaliation for engaging in the EEO process relative to her initial complaint in this matter (Agency No. HS-CBP-01474-2019), and USBP thereafter accepted that claim for investigation.

15. To date, CBP has not rendered a final decision in Ms. Borne's case.

16. To date, CBP has not finished its investigation into Ms. Borne's initial complaint or any of

her subsequent and accepted amendments.

17. To date, Ms. Borne has at all times fully and reasonably cooperated with CBP's investigation into and potential resolution of her complaint and subsequent amendments as follows:

    a. On or about August 13, 2019, Ms. Borne voluntarily submitted a signed, federal declaration setting out the specific facts and circumstances of the allegations in her initial complaint.

    b. On or about July 2019, Ms. Borne voluntarily participated in an EEO refereed mediation with decision-makers from USBP to resolve the entirety of her initial complaint and all subsequent amendments.

    c. The mediation was not successful, and the parties did not resolve their dispute.

    d. On December 29, 2019, Ms. Borne voluntarily submitted correspondence to CBP fully setting out the facts and circumstances of her subsequent and accepted amendment to her initial charge.

18. It has been more than 180 days since Ms. Borne filed her initial complaint of discrimination in this matter through the date of filing of this federal lawsuit.

19. It has been more than 365 days since Ms. Borne filed her December 29, 2019 amendment to her complaint of discrimination in this matter through the date of filing of this federal lawsuit.

20. CBP has not yet finished its investigation or rendered a final agency decision in the matter.

21. Ms. Borne has fully exhausted her administrative claims over each instance of discrimination and retaliation alleged throughout this lawsuit, and Ms. Borne desires to commence federal litigation in this matter to resolve her complaint of discrimination.

22. For all these reasons, Ms. Borne is aggrieved by CBP's failure to take final action on her complaint in this matter.

23. Accordingly, pursuant to 42 USC § 2000e-16(c) and 29 CFR § 1614.407(b), Ms. Borne now files this federal complaint arising from her initial complaint and subsequent amendments in this matter.

## FACTS

**A.     The Plaintiff – Carol Borne**

24. Carol Borne is a 51-year-old, white, woman, who has worked as a civilian employee assigned to USBP since 2003.

25. Ms. Borne was originally hired as a part-time clerk, and, through excellent work and dedication to service, Ms. Borne earned multiple promotions within the USBP, ultimately holding the permanent rank and job title of Supervisory Mission Support Specialist, Grade GS-13.

26. However, from 2017 through December 2019, Ms. Borne discharged the duties of a position one step above her permanent job title, the Director of Mission Readiness Operations Division ("Director of MROD"), a GS-14 Director/Division Chief-level position, while the Director of MROD position itself was vacant.

27. For some but not all of this time period, Ms. Borne was temporarily promoted to be Acting Director of MROD.

28. For the remainder of time, Ms. Borne served as the de facto Director of MROD and continued to perform all of the job's duties without any promotion or pay increase.

29. In this role, Ms. Borne supervised multiple USBP Mission Support Specialist employees and discharged high-level planning and decision-making for the entire New Orleans Sector, which covers all or portions of multiple states.

30. To date, through her separation of employment in August 2020, Ms. Borne has applied for the permanent Director of MROD position three times, but was never selected, as discussed in more detail below, despite her years of in fact fulfilling all of the duties of the role.

**B.  The Employing Agency – U.S. Customs and Border Protection, Office of United States Border Patrol**

31. Ms. Borne was employed by the United States Department of Homeland Security, U.S. Customs and Border Protections ("CBP"), United States Border Patrol ("USBP") at its New Orleans Sector headquarters in New Orleans, Louisiana.

32. CBP is a statutory agency of the United States Department of Homeland Security.

33. USBP is a statutory office of the CBP.

34. At all relevant times, CBP employed more than 500 employees.

35. USBP's statutory mission is to serve as the law enforcement office of CBP, and to interdict persons illegally entering or exiting the United States; interdict illegally imported or exported goods at points other than ports of entry; and deter and prevent the entry of terrorists, terrorist weapons, and other contraband.

**C.  USBP's Organizational and Leadership Structure**

36. USBP's national headquarters is located in Washington D.C.

37. USBP is geographically organized into "sectors," and each sector often cover multiple U.S. states, large linear stretches of the United States international border, and very large sections of United States territory.

38. Each sector maintains its own leadership and support staff which provide leadership, supervision, and mission support throughout the region.

39. The chief decision-maker with respect to all agency and personnel decisions at the sector-level is the Chief Patrol Agent (CPA).

40. The executive officer who assists the CPA is the Deputy Chief Patrol Agent (DCPA).

41. Typically, leadership at the sector-level then consists of different divisions, such as "division of law enforcement operations," or "division of operational support," and is headed-up by a Supervisory Border Patrol Agent, often referred to as a "Division Chief."

42. Thus, leadership and command structure at the sector-level, and specifically at the New Orleans Sector, often looks like this:



43. Typically, at the sector level, the general schedule pay scale for Chief Patrol Agent and Deputy Chief Patrol Officer are GS-15 or SES.

44. Typically, at the sector level, the general schedule pay scale for Division Chiefs and Directors are GS-15 or GS-14. The "Director of MROD" position at issue in this case was a GS-14 grade position.

45. Job titles at the Director/Division Chief level vary based on whether the position is held by a civilian, like Ms. Borne, or by a USBP agent. Regardless of who holds it and the corresponding title, the job duties of the position are the same. Thus, while Ms. Borne has sought to become the permanent Director of MROD, a USBP agent holding the same position would instead be referred to as the Division Chief of Operational Support.

46. At the New Orleans Sector, there are three Director/Division Chief positions.

47. During all of the relevant times in this case, Ms. Borne has served as the Acting Director of MROD in either an official or de facto capacity, despite having a permanent job title and rank

below the Director level, located at New Orleans Sector headquarters in New Orleans, Louisiana.

### D. USBP's Leadership Structure Appears to Be Segregated Based on Sex

48. Upon information and belief, a significant number of USBP employees are women.

49. Upon information and belief, USBP contains one national headquarters, twenty different sectors, and many stations within each sector, each with its own leadership structure.

50. Upon information and belief, throughout the entire USBP at least until the time that Ms. Borne separated from her employment in August 2020, there was only one woman who was assigned to a permanent position at the level of Associate Chief or higher at the USBP headquarters.

51. Upon information and belief, throughout the entire USBP at least until the time that Ms. Borne separated from her employment in August 2020, there was only one female USBP agent assigned as an Acting or Permanent Chief Patrol Agent.

52. Upon information and belief, there are statistically few women who occupy positions with general schedule pay scales of GS-14 or higher throughout the USBP.

53. Upon information and belief, there is, in effect, a virtual and statistically significant lack of any women who occupy any senior leadership positions throughout the entirety of the United States Border Patrol, despite the fact that women represent a significant, statistical composition of the total USBP workforce.

54. Upon information and belief, for the reasons described above, the USBP is currently and de facto segregated based on sex.

55. Upon information and believe, USBP is organizationally segregated such that virtually or in fact at times only men occupy senior leadership positions throughout the entire organization.

56. Upon information and belief, there is a de facto glass ceiling for women at the GS-14 level – meaning that permanent promotion opportunities are simply denied to women at the level of Director/Division Chief and above.

**E. Ms. Borne Serves as the Acting Director of MROD**

57. Since 2017, Ms. Borne has served as the Acting Director of MROD, either in an official or de facto capacity.

58. Initially, Ms. Borne performed all of the duties of this position without any formal promotion. Rather, she officially remained a "Supervisory Mission Support Specialist," Grade GS-13, and supervised other Mission Support Specialists and without any increased pay or recognition. Meanwhile, the Director of MROD position remained vacant.

59. In October 2018, Ms. Borne received a temporary, formal promotion to be the Acting Director of MROD. She held this position between October 14, 2018 and February 2, 2019 (the maximum period of time UBP regulations allowed her to serve in the capacity of a temporary promotion with the increased pay associated with the promotion).

60. After February 2019, Ms. Borne continued to perform the duties of the position, once again without the corresponding pay increase, and once again without any employee holding the Director of MROD position.

61. Ms. Borne had a high level of responsibility in this role, making decisions with respect to critical services that support USBP law enforcement operations throughout the entire New Orleans Sector.

**F. Ms. Borne Hits the Glass Ceiling**

62. Due to her extensive experience doing the job on both an official and de facto basis, Ms. Borne applied to become the permanent Director of MROD at every possible opportunity.

63. On June 29, 2018, USBP posted a nationwide announcement via USAJobs.com for the permanent Director of MROD position at New Orleans Sector, under vacancy announcement USBP-IMP-10245958-CJH.

64. Ms. Borne applied and was referred for further consideration.

65. Ms. Borne initially interviewed by telephone on August 13, 2018 and on August 23, 2018, and she had a face-to-face meeting with Chief Patrol Agent Gregory Bovino and Deputy Chief Patrol Agent Joseph Banco, Jr.

66. During the meeting, Bovino explained that he was exercising his discretion to close the announcement for the Director of MROD position without selecting a candidate to fill the post, but would re-announce the vacancy again at a later date. Bovino indicated that he did not feel enough qualified candidates had applied, and Bovino wanted to re-announce to position with available relocation funding to attract a larger pool of applicants. Bovino specifically indicated that this should not be seen as a poor reflection of Ms. Borne's candidacy for the position.

67. In fact, Bovino informed Ms. Borne, "[y]ou did great in the interview, aced it, and you are doing a fantastic job, the type of leadership I look for, and I fully expect you to apply again."

68. On September 6, 2018, Ms. Borne received notification via USAjobs.gov of her non-selection for the position.

69. On December 3, 2018, USBP/Bovino re-posted a nationwide announcement via USAjobs.gov for the same Director of MROD permanent position at New Orleans Sector.

70. Once again, Ms. Borne applied for the position and was referred for further consideration. She interviewed via videoconference with Bovino and several other high-level USBP agents, and believed the interview went very well.

71. Ms. Borne heard nothing about her application for almost five months, during which time

she continued to perform all of the duties of the Director of MROD position.

72.     On April 23, 2019, Bovino summoned Ms. Borne to his office and told her he had decided to once again close the announcement for the permanent Director of MROD position without making a selection, and intended to re-announce the position at a later date. Bovino said he had decided to do so because he sought a candidate who was a "strategic thinker."

73.     Ms. Borne asked if Bovino did not consider her to be a "strategic thinker," to which Bovino replied, "[w]ell you didn't get selected, did you?"

74.     Thereafter, Bovino continued to direct Ms. Borne to perform all the duties of the Director of MROD position without the corresponding title and pay, while the position remained vacant.

75.     On May 6, 2019, Ms. Borne received notification via USAjobs.gov of her non-selection for the position.

76.     On May 14, 2019, Ms. Borne contacted EEO and filed an informal complaint of discrimination, alleging that she was the most qualified person for the position but that CPA Bovino did not select her because she is a woman.

77.     In the EEO counseling process, Ms. Borne leaned that despite Bovino's statements implying there had been no suitable candidate in the applicant pool, Bovino had in fact submitted a single applicant for vetting as part of the selection process—a male candidate, J.M.[1] However, J.M. did not clear the vetting process, and was thus disqualified from consideration.

78.     Upon information and belief, there had been ten applicants for the Director of MROD position. Applicants were evaluated using a subjective scoring system, with a highest possible

---

[1] For privacy reasons, plaintiff uses initials for individual and federal employees when there is no direct allegation of discrimination against them.  Plaintiff will supplement the full identities all pseudonymized individuals to opposing counsel during discovery.

score of 99.

79. Ms. Borne had received the second highest combined score, a total score of 86, while J.M. received the highest score—one point higher at 87.

80. Nevertheless, Bovino had the discretion to select any candidate regardless of his or her score. In any event, upon information and belief, Ms. Borne was actually the most qualified candidate and Bovino awarded J.M. a slightly higher score to pretextually justify J.M.'s selection over Ms. Borne.

81. Although USBP custom and practice is to always select an acceptable alternate candidate for any open, competitive position, Bovino did not select Ms. Borne (or anyone else) as an alternate to J.M.

82. Upon information and belief, Bovino is biased against his subordinates based on sex and favors male applicants over female applicants for open positions.

83. Upon information and belief, Bovino cancelled the posting for the Director of MROD position because he did not want to promote Ms. Borne to the position because of her sex.

84. More specifically, upon information and belief, Bovino would have selected Ms. Borne for the permanent Director of MROD position had Ms. Borne been male.

85. Upon information and belief, Bovino only undertook this personnel decision with respect to Ms. Borne because he had either explicit or implicit authorization to do so from senior leadership at USBP Headquarters in Washington, D.C.

86. Upon information and belief, senior leadership at USBP Headquarters either directly or indirectly directs discriminatory personnel actions, such as and including Ms. Borne's non-selection for the Director of MROD position, because of systemic, disparate attitudes regarding sex.

87. Additionally or alternatively to the animus held by the decision-makers in this case, upon information and belief, USBP maintains either officially or in practice some policy, custom, or practice that, although perhaps facially neutral, has the disparately impacting effect that men are disproportionately favored and promoted to senior-leadership positions over women, and this policy, custom, or practice had the effect of disfavoring Ms. Borne for promotion to the Director of MROD position.

### G. Ms. Borne Is Again Discriminated Against Because of Her Sex and Also Retaliated Against After Initiating the EEO Process

88. On or about May 14, 2019, Ms. Borne timely initiated EEO contact regarding her claim of disparate treatment regarding her non-selection for the Director of MROD position.

89. Ms. Borne timely filed her initial complaint of discrimination in this case on or about August 13, 2019.

90. Subsequently, Ms. Borne submitted an application via USAjobs.gov for the same Director of MROD position at New Orleans Sector, advertised under announcement number USBP-SMP-10610632-CS.

91. Despite her objective qualifications and the fact that she was still performing all the duties of the position (as she had for more than two years), Ms. Borne was not referred for further consideration.

92. Ms. Borne was first notified of her non-referral and non-selection via email on November 14, 2019.

93. Upon information and belief, USBP decision makers (whether CPA Bovino or others) refused to consider Ms. Borne for the position both because of her sex but also in retaliation against her for filing her initial EEO complaint.

94. Specifically, upon information and belief, CPA Bovino either exercised his decision-

making authority against referring Ms. Borne for further consideration, or deliberately set the qualifications and applicant pool for the promotion in such a way that Ms. Borne was likely or guaranteed to not be referred for further consideration.

95.    In December 2019, Deputy Chief Patrol Agent Michael Harrison indicated to Ms. Borne that another USBP Agent assigned within New Orleans Sector, Patrol Agent-in-Charge Jon Joyner, would be detailed to Sector Headquarters in New Orleans as Acting Director of MROD, and Ms. Borne returned to her duties as SMSS until Mr. Joyner's departure in April 2020.

96.    Ultimately, CPA Bovino was transferred away from New Orleans Sector on or about April 12, 2020, and DCPA Harrison was temporarily promoted to Acting CPA of New Orleans Sector.

97.    After Mr. Harrison assumed the duties of Acting CPA, he once again temporarily promoted Ms. Borne as the Director of MROD from May 2020 until July 5, 2020 when the newly selected, permanent Director MROD entered on duty.

**H.    The Aftermath**

98.    In the face of an untenable working environment in which Ms. Borne was systematically discriminated and retaliated against, Ms. Borne accepted a GS-13 position with Customs and Border Protection assigned to the Port of New Orleans in August 2020.

99.    Because of the discriminatory and retaliatory employment actions alleged throughout this complaint, Ms. Borne is out significant lost back wages, lost future wages, and lost pension value attendant to the promotion for which she was not selected, as well as significant non-compensatory damages.

100.   Specifically, because of the discriminatory and retaliatory environment in which Ms. Borne has been forced to work, she has endured significant stress, anxiety, and related mental anguish and loss of enjoyment of life.

101. Additionally, because of the discriminatory and retaliatory employment actions alleged throughout this complaint, Ms. Borne is out future promotion opportunities and associated lost future wages attendant to her non-selections for promotion.

102. Additionally, because of the discriminatory and retaliatory employment actions alleged throughout this complaint, Ms. Borne has been forced to retain an attorney in this matter and has incurred reasonable attorney's fees and litigation costs.

## CAUSES OF ACTION

**A.     Unlawful Disparate Treatment Discrimination Based on Sex under Title VII**

103. Ms. Borne states a cause of action against defendant for unlawful disparate-treatment discrimination based on her sex (female), because of her non-selections for the promotion to the permanent position of Director of MROD, GS-0301-14, New Orleans, LA, advertised under job announcement USBP-IMP-10361517-CJH and again under announcement USBP-SMP-10610632-CS.

104. Title VII of the Civil Rights Act of 1964 (as amended) forbids an employer from discriminating against any employee on account of the person's protected status. 42 U.S.C. §2000e-2(a)(1). An employer illegally discharges an employee based on her protected status when that status is at least one of the factors motivating the discharge. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005); *cf* 42 U.S.C. § 2000e–2(m) (codifying that an employee proves unlawful discrimination when a protected status "was a motivating factor for any employment practice, even though other factors also motivated the practice"). When direct evidence of discrimination is not available, an employee may prove his case with circumstantial evidence that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected

class, or in the case of disparate treatment, shows that other similarly situated employees [not in the protected class] were treated more favorably." *Bryan v. McKinsey & Co.,* 375 F.3d 358, 360 (5th Cir. 2004).

105. In a disparate treatment case, "[s]tatistical evidence is also of central importance," and an employee may prove his prima facie case statistically "if gross statistical disparities in the composition of an employer's work force can be shown." *Pouncy v. Prudential Ins. Co. of Am.*, 668 F.2d 795, 802 (5th Cir. 1982). Specifically, when "the statistical showing is sufficiently strong in a disparate treatment action, [an employee's] prima facie case can be made without additional evidence establishing that defendant purposefully treated minorities protected under Title VII less favorably than other persons." *Id.* "If statistical evidence is insufficient to establish discriminatory intent, [employees] may bolster their case by introducing historical, individual, or circumstantial evidence." *Anderson v. Douglas & Lomason Co., Inc.*, 26 F.3d 1277, 1285 (5th Cir. 1994).

106. Finally, in a Title VII action, an employer is vicariously liable for its manager's discriminatory acts when the manager serves as the employer's agent, or when the employer knew or should have known of the manager's discriminatory conduct and took no remedial action. *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).

107. In this case, U.S. Customs and Border Protection, and its Office of United States Border Patrol, has a statistically apparent and historical pattern of denying promotion opportunities to women in favor of men to the senior-most leadership positions at the sector-level, headquarters, and across the entire GS-14 pay scale. Ms. Borne was a long-time employee and exceptional performer, the most objectively qualified applicant for the permanent Director of MROD position, and was in fact assigned to perform all of the duties of the Director of MROD position for close to three years while the permanent position remained vacant. Yet, Ms. Borne hit the "glass ceiling"

at the GS-13 level when she applied to be promoted to permanent Director of MROD position. Although Ms. Borne was evidently considered by leadership to be the best person available to do the job for close to three years and recognized as doing a "fantastic job," once she wanted the corresponding recognition, title, and pay increase, she was told she was not enough of a "strategic thinker" to deserve the permanent position—only to be assigned all of the additional duties of this supervisory role for seven more months.

108.   Upon information and belief, the personnel decisions of USBP and CPA Bovino in not selecting Ms. Borne for promotion were specifically motivated by sex. Stated another way, had Ms. Borne been a man, she would have been selected for the promotion alleged in this case.

109 .   Upon information and belief, at all times relevant here, the decisions of Bovino and perhaps other senior leadership officials at USBP headquarters were done purposefully, within the course and scope of their duties, and as agents of Customs and Border Protection.

110.   Accordingly, Customs and Border Protection and the United States Border Patrol is liable for all actual and statutory damages suffered by Ms. Borne resulting from CBP and USBP's intentionally discriminatory employment actions and disparately impacting policies, including, but limited to, back pay, front pay, compensatory damages, mental anguish damages, loss of enjoyment of life, reasonable attorney's fees and costs incurred in this action; and, further, CBP is liable to reinstate Ms. Borne to the position of Director of MROD for which she was unlawfully not selected, or another position of identical or senior grade.

**B.     Unlawful Retaliation Under Title VII**

111.   Ms. Borne states a cause of action against defendant for unlawful retaliation concerning her non-referral and non-selection for promotion to the permanent position of Director of MROD, GS-0301-14, advertised under Job Opportunity Announcement USBP-SMP-10610632-CS.

112. Pursuant to Title VII of the Civil Rights Act of 1964 (as amended), an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice under [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]. 42 U.S.C. §2000e-3(a). In a retaliation case, "an adverse employment action is one that 'a reasonable employee would have found . . . [to be] materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53 (2006)). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)). Just as in a Title VII discrimination case, an employer remains vicariously liable for the acts of its decision-maker when the decision-maker serves as the employer's agent, or when the employer knew or should have known of the decision-maker's discriminatory conduct and took no remedial action. *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989). A federal employer who violates Title VII is liable for the victim's back wages, front wages, reinstatement, statutory damages, attorney's fees, and litigation costs.

113. Further, a plaintiff who alleges unlawful retaliation that grows out of a previously filed and exhausted EEO charge is not required to administratively exhaust the subsequent and related retaliation claim. *Gupta v. E. Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) ("[W]e hold that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge"); *accord Eberle v. Gonzales*, 240 Fed. Appx. 622, 628 (5th Cir. 2007) (recognizing applicability of the so-called "*Gupta* exception" in federal EEO cases).

114. In this case, as alleged, Ms. Borne was an exceptional performer who, prior to her applications for promotion to become the permanent Director of MROD in 2018 and 2019, had been routinely promoted and recognized within USBP, and at the very least was identified as one of the most qualified applicants and referred for further consideration and interviews the first two times she applied. However, once Ms. Borne filed her initial EEO charge in this matter, she was not only rejected for the promotion when she next applied, but she was not even referred for consideration, despite her objectively being the best qualified person for the role. Upon information and belief, either Bovino or other USBP officials intentionally retaliated against Ms. Borne because of her previously filed complaint in this case by ensuring that she was not selected or referred for consideration for the promotion.

115. Accordingly, Customs and Border Protection and the United States Border Patrol are liable for all actual and statutory damages suffered by Ms. Borne resulting from CBP and USBP's illegal and retaliatory employment actions, including, but limited to, back pay, front pay, compensatory damages, mental anguish damages, and reasonable attorney's fees and costs incurred in this action; and, further, CBP is liable to reinstate Ms. Borne to the position of Director of MROD for which she was unlawfully not selected, or another position of identical or senior grade.

**JURY DEMAND**

Ms. Borne requests a trial by jury on all claims and causes of action asserted in this matter.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Carol Borne prays that her complaint be deemed good and sufficient; that it and summons be served upon defendant Alejandro Mayorkas, solely in his official capacity as Acting Secretary of the United States Department of Homeland Security; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant for

(1) all damages and equitable relief due to plaintiff, including lost back wages, lost future wages, lost pension value, other compensatory damages, statutory damages, costs, attorney's fees, and legal interest from the date of demand; (2) an injunction ordering defendant to reinstate Ms. Borne to the most senior position within USBP for which Ms. Borne was unlawfully not selected or which equity otherwise requires; and (3) an injunction prohibiting defendant from engaging in all current and future sex-based discrimination against women seeking promotion to senior leadership positions and more generally within the GS-14 pay grade, or higher general schedule pay grade, and to further enjoin defendant from engaging in unlawful retaliation against any employees for prior, protected EEO activity; and for all other general and equitable relief plaintiff is entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Telephone: (504) 275-5149
Facsimile: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Carol Borne*